AO 91 (Rev. 11/11)  Criminal Complaint

| | | |
|---|---|---|
| AUSA: Darrin Crawford | | Telephone: (313) 226-9100 |
| Special Agent: Ryan Thick | | Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Markenvan LOVE

Case: 2:23-mj-30474
Assigned To : Unassigned
Assign. Date : 11/29/2023
CMP: SEALED MATTER (MAW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 28, 2023__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (g)(1) | Felon in posession of a firearm |
| 18 U.S.C. § 924 (c) | Possession of a firearm in furtherance of a drug trafficking crime |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Ryan Thick, Special Agent (ATF)
Printed name and title

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: __November 29, 2023__

_____
Judge's signature

City and state: __Detroit, Michigan__

Hon. Elizabeth A. Stafford, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF
# A COMPLAINT AND ARREST WARRANT

I, Special Agent (SA) Ryan Thick, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since November of 2022. I am currently assigned to the ATF Detroit Field Office, Group IV. I completed 26 weeks of training, including the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I received extensive training on firearms identification, common scenarios involving firearms and narcotics trafficking, and identification of controlled substances. Additionally, I received training on undercover investigations related to firearms and narcotics trafficking, which included investigative techniques and recognition of common subject behavior. I have a bachelor's degree in criminal justice and master's degree in business management and leadership.

2. Previously, I was a United States pretrial/probation officer in Detroit, MI, and Springfield, IL, for approximately one year and employed with the Michigan Department of Corrections as a probation/parole officer in Flint, MI, for approximately

five years. As a probation/parole officer with the Michigan Department of Corrections, I was assigned to the FBI Flint Safe Streets Task Force for approximately one year. As an FBI embedded agent, I have participated in numerous state and federal investigations to including illegal narcotics, gang, and firearms investigations.

3.     While with ATF, I have investigated violent crimes, narcotics, and firearms related criminal violations.  I have executed search warrants, utilized confidential informants, performed interviews, analyzed data extracted from seized cellular devices, and engaged various surveillance techniques, including physical, electronic, and visual surveillance.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit merely establishes sufficient probable cause for the requested complaint and arrest warrant and does not set forth all the facts known to law enforcement regarding this investigation.

## II.     INVESTIGATION AND PROBABLE CAUSE

5.  In August of 2023, Metro Narcotics Enforcement Team (MNET) detectives received an anonymous tip regarding a suspect involved in the distribution of cocaine in the Metro Detroit area. The tipster personally purchased narcotics from a male suspect, approximately 45 years of age, bald, weighing about 300 lbs and driving a newer white Ford F-150.  The suspect used an alias "Joey Crack" and provided cellular phone number

(313) XXX-XXXX. Joey Crack was said to carry firearms and was known to sell narcotics in the city of Detroit, Michigan near Clairmount Street and Rosa Parks Blvd.

6. MNET detectives later identified suspect Markenvan Thomas Darayle LOVE (DOB: XX/XX/1979) as Joey Crack. Investigation revealed that LOVE, 44 years old, weighed approximately 320 lbs, drives a white Ford F-150 and utilizes the cellular phone number provided by the tipster.

7. Review of LOVE's computerized criminal history revealed that he has three (3) felony convictions in 3rd Circuit Court Wayne County Michigan: (1) a 1996 dangerous drugs conviction; (2) a 1996 stolen property conviction; and (3) a 1998 sexual assault.

## Surveillance and Search Warrant

8. MNET detectives conducted surveillance of LOVE between August and September of 2023. LOVE was observed conducting suspected hand-to-hand narcotics transactions at multiple locations including in the area of Clairmount Ave. and Rosa Parks Blvd. While being surveilled, LOVE was observed pulling his vehicle into the driveway of 1XXX Kenmoor St. Detroit, MI, retrieving a bag from the rear passenger seat and entering the residence.

9. MNET detectives obtained a state search warrant signed by Judge Tina Brooks-Green of the 34th District Court for the Kenmoor St. address.

10. Upon entry into the residence, law enforcement located two males: LOVE and RL. RL is a neighbor that lives next door to LOVE, whom officers observed entering and exiting a neighboring home at various points during surveillance of LOVE.

11. During the execution of the search, LOVE was observed by law enforcement exiting the very master bedroom in which six (6) firearms were located: one loaded Taurus 9mm pistol found on the nightstand next to the bed; three loaded (3) guns—one Ruger Model 5.7, 5.7 caliber pistol; one Smith & Wesson, Model Shield .40 caliber pistol; and one Kel-Tec, Model PF9, 9 mm pistol—lined beside each other atop the dresser in plain view; and a loaded AK 47 Draco and a collapsible stock .223 rifle leaning on the wall. No other person was found in, or observed leaving, that master bedroom.

12. Love also provided the code to a safe located in the basement in which a large sum of money and one and one-half (1.5) kilograms of TruNarc field tested cocaine were seized.

13. Law enforcement located a false bottom shelf on the wall of what appeared to be a kid's bedroom. On the shelf were various sized packages of substances that, based upon training and experience, had the physical appearance and characteristics of controlled substances, including suspected fentanyl and heroin. Field testing returned positive results for cocaine, methamphetamine, and crack cocaine; the suspected fentanyl and heroin were sent to the lab for testing.

14.     Law enforcement located five (5) cellular phones: two (2) iPhones in the master bedroom on the bed; an iPhone and an android phone on the dining room table; and one iPhone in the center console of LOVE's F-150.

15.     In total, law enforcement recovered eight (8) firearms, five (5) cellular phones, nearly $250,000 in cash, and various types of field-tested narcotics including cocaine, methamphetamine, and crack cocaine.

## INTERVIEW

16.     LOVE was interviewed by MNET detectives and admitted to being a felon and to having served a term of incarceration and obtaining his general education degree (GED) while incarcerated.  When MNET detectives asked Love what he thought they located in the residence, he stated guns, money and that other stuff in the safe.  LOVE indicated he had knowledge of the firearms recovered and made statements relating to not shooting and needing the firearms to protect himself because he was a hustler.

17.     LOVE admitted to arranging drug deals through one of his five (5) cellular phones.  LOVE acknowledged selling 20 (twenty) dollar bags of crack cocaine to addicts and larger quantities to drug dealers, which he characterized as a good business model.  When questioned about the false bottom shelf in the kid's bedroom, LOVE stated he forgot all about the drugs in the shelf.  LOVE made a statement about not getting out of prison, referring to the fentanyl that was located in the shelf.

18. Law enforcement interviewed RL. RL denied living at LOVES's Kenmoor residence. He denied ownership of any of the narcotics or guns confiscated during the search.

19. From training and experience, I am aware that drug dealers routinely strategically place firearms within their vehicle and residence for easy access in furtherance of their drug trafficking activity. Furthermore, based on my training and experience, as well as LOVE's comments, number of cellular phones, the number and placement of loaded firearms atop the dresser, against the wall and in his vehicle's center console, there is probable cause that LOVE's possession of one or more of the firearms was in furtherance of his drug trafficking activity.

20. On November 6, 2023, I contacted SA Jacobs, an expert in the Interstate Nexus of firearms and ammunition. SA Jacobs has specialized knowledge experience and training as it relates to firearms and firearms identification. Based on his review and the information provided, SA Jacobs opined that each of the guns recovered during the Kenmoor St. search are firearms as defined by federal law and were manufactured outside the state of Michigan, thus having traveled in and affected interstate commerce.

### III. CONCLUSION

1. Based on the aforementioned facts, probable cause exists that Markenvan LOVE, did: knowingly, intentionally and unlawfully possess firearms in violation of 18 U.S.C. § 922(g)(1); possess with intent to distribute controlled substances in violation

of 21 U.S.C. § 841(a)(1); and possess a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

Respectfully Submitted,

_____
Ryan Thick, Special Agent
Bureau of Alcohol, Tobacco,
  Firearms and Explosives

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Hon. Elizabeth A. Stafford
United States Magistrate Judge